IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

ROBERT HARRIS, and WORLD ANSWERS,
INC., and NATURAL SYSTEMS
TECHNOLOGIES, INC.

                                       Plaintiffs,

    v.

LEXJET CORP. and LEXJET SERVICES CO.,
LLC,

                                    Defendants.

Action No. 3:09–CV–616

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants' Motion to Dismiss (Docket No. 5) based on Rule 12(b)(6).[1] For the reasons that follow, the Court GRANTS the Motion WITHOUT PREJUDICE as to Counts 1, 2, and 5 and GRANTS the Motion WITH PREJUDICE as to Counts 3 and 4.

## I. BACKGROUND

This controversy concerns software that Plaintiffs World Answers, Inc., Natural Systems, Technologies, Inc., and Robert Harris developed while Harris was engaged as an

---

[1] Although Harris filed a sur-response brief, the Court has not considered it. No new arguments were discussed in Lexjet's Reply and the parties' arguments were fully communicated to the Court within the briefs that the Rules permit.

independent contractor[2] by the makers of digital printing technologies, Defendants Lexjet Corporation and Lexjet Service Co., LLC (collectively "Lexjet").

The parties' relationship commenced in 1999 when Lexjet hired Harris, as president of Plaintiff Natural Systems, to create a computer program to manage Lexjet's Internet sales. In 2005, Harris terminated Natural Systems and instead began contracting with Lexjet through Plaintiff World Answers, another corporation started by Harris. A year later, World Answers was also terminated, however, Harris continued to consult for Lexjet in his individual capacity.

Despite the changing nature of Harris's affiliations, the work he did for Lexjet remained the same throughout his tenure there. So too did the billing arrangement: Harris worked for half his normal rate and Lexjet agreed to grant Harris ownership rights to the software developed by Harris and permission to market the software to other Internet based sales companies. The parties never memorialized this arrangement or the exact nature of Harris's relationship with Lexjet in a written agreement. According to Harris, it was expressly understood that the software was an experimental beta version and that upon completion of the project, Lexjet would retain no property rights in it.

---

[2] Harris states that he paid all the expenses incurred while developing the software, that he did the work from his home, that he had complete discretion when to work, that Lexjet was not in the business of software development, and that he personally paid all his state and federal withholding taxes himself. (Amend. Compl. ¶¶ 33-38.) Although labeling an individual an "independent contractor" is a legal conclusion, there are substantial facts to support the label in the Complaint and Lexjet made no issue with the description in its memoranda in support of its Motion to Dismiss. These facts and the facts that follow are taken from Harris's Complaint and are assumed true for purposes of this Motion. See Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

The software Harris eventually developed—dubbed the "Rob System"—enables Lexjet to efficiently manage its Internet purchasing, sales, and distribution. The Rob System operates as a "Software as a Service," or "SaaS," which is a model of software deployment whereby Lexjet provides the software to customers for use as a service on demand as opposed to a permanent program located on customers' hard drives. When a consumer makes a purchase from Lexjet's website, www.lexjet.com, executable software is downloaded to the consumer's computer. When a consumer returns to that site, the computer can pull up the version stored on the hard drive rather than download the software anew. This type of technology is used in many popular web programs such as Google's email program Gmail and the popular social networking site Facebook.com.

Harris continued to develop the software until Lexjet ended its relationship with him in 2006. Since that time, while Lexjet has not compensated Harris in any way or entered into a licensing agreement with him, Lexjet continues to use the Rob System or a derivative of it.

On November 22, 2007, Harris registered the Rob System with the United States Copyright Office, who assigned it copyright registration number TXu 1-599-694. The registration document indicates the "Date of Creation" as 2007.

At some point in time, which the Amended Complaint does not reveal, Harris entered into negotiations to license his software to Media One. When Harris approached Lexjet about obtaining a statement from Lexjet acknowledging Harris's ownership of the software, Lexjet refused even though it knew Harris was trying to license it. As a result, Harris was apparently never able to establish a licensing arrangement with Media One.

This state of affairs led Harris and his two former corporations to file a five count Amended Complaint against Lexjet in November 2009. In Counts 1 and 2, Harris alleges Lexjet is directly and secondarily infringing on Harris's copyrighted software. Count 5 seeks to enjoin that behavior. In Count 3, Harris alleges a violation of the Virginia Computer Crimes Act. Count 4 alleges that Lexjet tortiously interfered with Harris's business relationships.

Prior to Harris filing his Amended Complaint, Lexjet filed this Motion to Dismiss, asserting that the Complaint fails to state any claims upon which relief can be granted.

## II. LEGAL STANDARD

Rule 8 of the Federal Rules of Civil Procedure requires a complaint stating a claim for relief to contain a short plain statement of the claim that gives the defendant fair notice of what the claim is and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Defendants police this requirement using Rule 12(b)(6), which permits a party to test the legal sufficiency of a complaint. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). A 12(b)(6) motion does not, however, "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Id. As a result, in resolving a 12(b)(6) motion, a court must regard all of plaintiff's well-pleaded allegations as true, Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993), as well as any facts that could be proved consistent with those allegations, Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). In contrast, the court does not have to accept legal conclusions couched as factual allegations, Twombly, 550 U.S. at

555, or "unwarranted inferences, unreasonable conclusions, or arguments," E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). With these principles in mind, the court must ultimately ascertain whether the plaintiff has stated a "plausible, not merely speculative, claim for relief." Twombly, 550 U.S. at 555.

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950. While Rule 8(a)(2) requires a showing, not simply a blanket assertion of "entitlement to relief," the plaintiff is not required to show that it is likely to obtain relief. Twombly, 550 U.S. at 556 n.3; Iqbal, 129 S. Ct. at 1949. In the end, if the complaint alleges—directly or indirectly—each of the elements of "some viable legal theory," the plaintiff should be given the opportunity to prove that claim. Twombly, 550 U.S. at 563 n.8.

### III. DISCUSSION

#### A. Direct Copyright Infringement

Under the federal Copyright Act, copyright infringement occurs when a person "violates any of the exclusive rights of the copyright owner." 17 U.S.C. § 501(a). Therefore, the two elements of an infringement claim are (1) ownership of a valid copyright and (2) encroachment upon one of the exclusive rights afforded by the copyright. Avtec Sys, Inc. v. Peiffer, 21 F.3d 568, 571 (4th Cir. 1994). The Copyright Act grants the owner of a copyright the exclusive right to, among other things, "distribute copies . . . of the copyrighted work to

the public by sale or other transfer of ownership, or by rental, lease, or lending," 17 U.S.C. §

106(3), and "to prepare derivative works based upon the copyrighted work." Id. § 106(2).

In his Complaint, Harris attempts to allege that he has a valid copyright in the Rob

System and that each time a Lexjet customer uses the software, it is duplicated without

permission in violation of copyright law. (Amend. Compl. ¶¶ 48-52.) The Court finds,

however, that Harris's Amended Complaint fails to plead factual content that allows this

Court to conclude or reasonably infer that Harris is the owner of the software currently

used by Lexjet. See Iqbal, 129 S. Ct. at 1949. Despite several references to the copyright

registration in his Complaint, Harris did not provide a copy of it. Lexjet, however, did

attach three pages of registration documents to its Memorandum in Support of its Motion

to Dismiss.[3] Those registration documents unequivocally state that the "Date of Creation"

is 2007. If Harris created the software in 2007—a year after his relationship with Lexjet

ended—then the software that Lexjet began using in 2006 cannot be the software

registered by Harris. Since registration is a prerequisite to a copyright claim, Harris's claim

must fail.

Harris attempts to rebut this date by providing a document that allegedly is also a

copyright registration form for the software. The date of creation field is left blank in the

document Harris provided, which the Court presumes Harris believes helps his case by

sowing doubt as to when the software was created. Apart from any doubt it may create,

what the document does not do is help to establish that Harris owns a copyright in the

---

[3] A district court may consider documents "attached to the motion to dismiss, so long as
they are integral to the complaint and authentic." Sec'y of State of Defence v. Trimble
Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007).

software used by Lexjet. Moreover, although the document Harris provided lists the case number "1-271348171" at the top of the page, there is no indication on the face of this document that it actually has anything to do with the software in this case. As a result, the Court GRANTS the Motion to Dismiss as to this claim because Harris has not provided sufficient factual support for an essential element of his copyright infringement claim.

## B. Secondary Copyright Infringement

Courts recognize several types of secondary liability for copyright infringement. <u>See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.</u>, 545 U.S. 913, 930 (2005). One category of such secondary liability is vicarious liability, which generally exists when a defendant (1) possesses the right and ability to supervise the infringing conduct and (2) has "an obvious and direct financial interest in the exploitation of copyrighted material." <u>Gershwin Publishing Corp. v. Columbia Artists Mgmt., Inc.</u>, 443 F.2d 1159, 1162 (2d Cir. 1971); <u>see also</u> Nimmer on Copyright, § 12.04[A][2] (2008).

Because the Court grants the Motion to Dismiss as to Harris's direct infringement claim, it must also GRANT the Motion as to the secondary infringement claim as Harris cannot advance an infringement claim for a copyright he has not sufficiently plead that he has registered. <u>See</u> 17 U.S.C. § 411.

## C. Virginia Computer Crimes Act Claim

The elements necessary to show a violation of § 18.2-152.3 of the Virginia Computer Crimes Act ("VCCA") are: (1) that the defendant "use[d] a computer or computer network;" (2) "without authority;" and (3) "with the intent to . . . [o]btain property or services by false pretenses; . . . [e]mbezzle or commit larceny; or . . . [c]onvert the property of another." Va.

Code Ann. § 18.2-152.3; see also id. § 18.2-152.12(A) (providing a civil cause of action for damages to one injured as a result of a violation of the Act). The Virginia Supreme Court has held that pursuant to § 18.2-152.8 of the VCCA, "computer data, computer programs, [and] computer software" are "personal property subject to embezzlement." Perk v. Vector Resources Group, Ltd., 485 S.E.2d 140, 143 (Va. 1997).

The Fourth Circuit has held that federal copyright law preempt state law claims that are equivalent to copyright infringement claims under federal law. Rosciszewski v. Arete Associates, Inc., 1 F.3d 225, 230 (4th Cir. 1993). In order to ascertain whether a specific state cause of action involves a right equivalent to one of those identified in § 106, reference must be made to the elements of the state cause of action. See Trandes Corp. v. Guy F. Atkinson, Co., 996 F.2d 655, 659 (4th Cir. 1993). State-law claims that infringe one of the exclusive rights contained in § 106 are preempted by § 301(a) if the right defined by state law "'may be abridged by an act which, in and of itself, would infringe one of the exclusive rights.'" Computer Assocs. Int'l v. Altai, Inc., 982 F.2d 693, 716 (2d Cir. 1992) (quoting Harper & Row, Publishers, Inc. v. Nation Enters., 723 F.2d 195, 200 (2d Cir.1983), rev'd on other grounds, 471 U.S. 539 (1985)). However, "if an 'extra element' is 'required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action, . . . there is no preemption,'" id. (quoting 1 Nimmer on Copyright § 1.01 [B], at 1-14 to 1-15 (1992)), provided that "the 'extra element' changes the 'nature of the action so that it is qualitatively different from a copyright infringement claim,'" id. (quoting Mayer v. Josiah Wedgwood & Sons, Ltd., 601 F. Supp. 1523, 1535 (S.D.N.Y. 1985)).

Citing <u>Dorsey v. Money Mack Music, Inc.</u>, 304 F. Supp. 2d 858, 865 (E.D. La. 2003), Harris asserts that his VCCA claim is not preempted because he is claiming the conversion of monetary funds, not the conversion of intangible rights under copyright law. (Amend. Compl. ¶ 61.) However, <u>Dorsey</u> not only fails to support Harris's argument, it actually supports the opposite conclusion. In <u>Dorsey</u>, the court specifically stated that "[p]reemption is appropriate in the majority of instances because the typical unjust enrichment claim is qualitatively equivalent to a cause of action for copyright infringement." <u>Id.</u> The only reason the court in <u>Dorsey</u> held that there was no preemption was because plaintiff's underlying damages were the result of state law fiduciary duty claims that rendered the claims qualitatively different from a copyright infringement claim. <u>Id.</u> Unlike in <u>Dorsey</u>, Harris's claim for "conversion" is simply an attempt to seek monetary damages for alleged copyright violations under a different name. As such, the Court holds that Count 3 is preempted and thus the Motion to Dismiss this claim is GRANTED.

**D. Tortious Interference with Business Relationship Claim**

A claim of tortious interference requires a showing of: "(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted." <u>T.G. Slater & Son, Inc. v. Donald P. and Patricia A. Brennan LLC</u>, 385 F.3d 836, 844 (4th Cir. 2004) (quoting <u>Chaves v. Johnson</u>, 335 S.E.2d 97, 102 (Va. 1985)).

In his Amended Complaint, Harris alleges that he had entered into negotiations with Media One and that Lexjet knew of these negotiations. In reference to the third element, Harris then adds that Lexjet has intentionally interfered with Harris's business expectancy by "refus[ing] to acknowledge Harris' [sic] ownership rights in the software, therefore effectively barring Harris' [sic] licensing activities with Media One." (Amend. Compl. ¶ 69.) Harris's Amended Complaint does not expand in any way on how refusing to acknowledge Harris's ownership interfered with Harris's business relationships. Nor does Harris's Amended Complaint explain why a third party would care about what Lexjet says about ownership of the software, especially since Harris has a registered copyright in it. Even viewed in its most favorable light, Harris's allegations on the third element are conspicuously lean on facts. It is well settled that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949. Harris's allegations are simply sterile legal conclusions that "are not entitled to the assumption of truth." Id. at 1950. Stripped of such legal incantation, these allegations provide insufficient factual support for at a minimum the third element of his tortious interference claim. As a result, Harris's Amended Complaint fails to sufficiently plead a claim of tortious interference with a business relationship, and thus the Court GRANTS the Motion to Dismiss as to Count 4.

## IV. CONCLUSION

For the foregoing reasons, the Court will GRANT the Motion WITHOUT PREJUDICE as to Counts 1, 2, and 5 and GRANT the Motion WITH PREJUDICE as to Counts 3 and 4. An appropriate Order will accompany this Memorandum.

Let the Clerk send a copy of this Memorandum to all counsel of record.

_____/s/_____
James R. Spencer
Chief United States District Judge

ENTERED this  3rd   day of December 2009